IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

Case Number: 4:23-cv-00338-ALM

GS HOLISTIC, LLC,

                Plaintiff,

v.

THAPA, INCORPORATED d/b/a
CIGARETTES FOR LESS and RUBINA
THAPA,

                Defendants.
_____/

**MOTION FOR DEFAULT FINAL JUDGMENT AGAINST BOTH DEFENDANTS**

Pursuant to Federal Rule 55(b)(2), the Plaintiff, GS HOLISTIC, LLC, moves this Court for entry of default judgment against the Defendants, THAPA INCORPORATED d/b/a CIGARETTES FOR LESS and RUBINA THAPA, in this action. The Defendants were served with the summons and Complaint but failed to file an answer or otherwise defend in this lawsuit. The Plaintiff now requests that this Court enter the attached proposed Default Judgment and Order for Other Equitable Relief, and Civil Money Penalties ("Default Judgment"). The Default Judgment award includes Statutory Damages of $150,000, and Costs in the amount of $752 to be imposed against the Defendants.

**I. PRELIMINARY STATEMENT**

As a result of Defendants' failure to appear in this action and the subsequent entry of default against them, the material factual allegations set forth in the Plaintiff's Complaint must be accepted as true. Those allegations establish all of the necessary elements of the Plaintiff's claims for (i)

willful trademark infringement of the G Pen trademarks in violation of 15 U.S.C. §§ 1114; (ii) trademark counterfeiting of the G Pen trademarks in violation of 15 U.S.C. §§ 1116(d); and (iii) willful trademark infringement (false designation) in violation of 15 U.S.C. § 1125(a).

On the facts presented, it is also appropriate for the Court to grant the Plaintiff all relief requested in this motion, namely:

    a.    Statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c) in the amount of $150,000 ($50,000 per mark); and

    b.    Costs in the amount of $752.

In sum, the Plaintiff seeks an award of statutory damages for Defendants' willful conduct, and an award of the Plaintiff's costs.

## II.    STATEMENT OF FACT

    a.    <u>The "G Pen" Trademarks and Plaintiff's Business.</u>

For nearly ten years, the Plaintiff has marketed and sold products bearing the G Pen Trademarks, as the Plaintiff is the registered owner of these marks. *See* Compl. ¶¶ 9, 5; [DE 1]. The G Pen brand has become one of the leading companies in the industry of portable vaporizers and accessories, making the G Pen a brand that is widely known both nationally and internationally, known for being high quality while still at an achievable price point. Compl. ¶ 8.

The G Pen brand has become the premier manufacturer of vaporizers through its work over the past decade. Compl. ¶ 9. The authentic G Pen products are high quality due to the attention to detail the Plaintiff has put into its products. Compl. ¶ 9. Due to the Plaintiff's efforts and attention to detail and quest to always be on the forefront of innovation in this industry, the G Pen branded products have a significant following and are sought after both in the United States and abroad. *See* Compl. ¶ 9.

The Plaintiff has spent substantial time, money and effort in developing consumer

recognition and awareness of the G Pen trademarks. Since 2016, the Plaintiff has built consumer recognition of the G Pen Brand, through displays, point of purchase materials, their website, attendance at trade shows, and through social media. Compl. ¶ 19. The Plaintiff has even done numerous collaborations with celebrities and other companies due to the high quality of the G Pen products. Compl. ¶ 20.

At the time of this Complaint, the Plaintiff was the owner of federally registered and common law trademarks. The following is a list of the G Pen trademarks:

a. U.S. Trademark Registration Number 4,390,645 for the standard character mark "G Pen" in association with goods further identified in registration in international class 010.
b. U.S. Trademark Registration Number 5,368,594 for the word mark "G Pen" and its logo in association with goods further identified in the registration in international class 010.
c. U.S. Trademark Registration Number 4,462,090 for the standard character mark "MicroG" in association with goods further identified in the registration in international class 010.
d. U.S. Trademark Registration Number 4,470,963 for the standard character mark "Grenco Science" in association with goods further identified in the registration in international class 010.
e. U.S. Trademark Registration Number 4,616,071 for the standard character mark "Grenco" in association with goods further identified in the registration in international class 010.
f. U.S. Trademark Registration Number 4,466,586 for the word mark "G" and its logo in association with goods further identified in the registration in international class 010.
g. U.S. Trademark Registration Number 5,264,986 for the standard character mark "G Pen Elite" in association with goods further identified in the registration in international class 034.
h. U.S. Trademark Registration Number 5,264,988 for the design plus words mark "G Pen Elite" and its logo in association with goods further identified in the registration in international class 034.
i. U.S. Trademark Registration Number 5,368,591 for the standard character mark "G Slim" in association with goods further identified in the registration in international class 010.
j. U.S. Trademark Registration Number 5,368,593 for the word mark "G Slim" and its logo in association with goods further identified in the registration in international class 010.
k. U.S. Trademark Registration Number 5,363,580 for the word mark "GIO" and its logo in association with goods further identified in the registration in international

class 010.
l. U.S. Trademark Registration Number 5,363,581 for the standard character mark "GIO" in association with goods further identified in the registration in international class 010.
m. U.S. Trademark Registration Number 5,405,360 for the word mark "G Grenco Science" and its logo in association with goods further identified in the registration in international class 010.
n. U.S. Trademark Registration Number 5,405,361 for the word mark "G Grenco Science" and its logo in association with goods further identified in the registration in international class 010.
o. U.S. Trademark Registration Number 5,906,587 for the standard character mark "G Pen Nova" in association with goods further identified in the registration in international class 010.
p. U.S. Trademark Registration Number 5,906,588 for the design plus words mark "G Pen Nova" and its logo in association with goods further identified in the registration in international class 010.
q. U.S. Trademark Registration Number 6,032,396 for the standard character mark "Roam" in association with goods further identified in the registration in international class 010.
r. U.S. Trademark Registration Number 6,032,397 for the design plus words mark "Roam" and its logo in association with goods further identified in the registration in international class 010.
s. U.S. Trademark Registration Number 6,202,143 for the standard character mark "G Pen Dash" in association with goods further identified in the registration in international class 010.
t. U.S. Trademark Registration Number 6,202,144 for the design plus words mark "Dash" and its logo in association with goods further identified in the registration in international class 010.

b. <u>The G Pen Marks are Counterfeiting Target</u>.

The superiority of G Pen products is not only readily apparent to consumers but to industry professionals as well. It is because of the recognized quality and innovation associated with G Pen branded products that consumers are willing to pay higher prices for them. For example, a G Pen branded vaporizer ranges from $70 to $250, while a non-G Pen branded product of equivalent size and technology will usually sell for less than $110. Compl. ¶ 22.

c. <u>Defendants' Infringing Conduct and Failure to Litigate</u>.

The Defendants have engaged in continuous and systematic business in Florida and derive substantial revenue from commercial activities in Florida. Specifically, the Defendants have

engaged in the unlawful manufacture, retail sale, and/or wholesale sales of counterfeit G Pen branded water pipes and related parts. Compl. ¶ 6.

The Defendants have sold goods with marks allegedly with Trademarks registered to the Plaintiff. Compl. ¶ 25-26. The Defendants' acts constitute willful trademark infringement. Compl. ¶ 43. The Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Counterfeit Goods sold by the Defendants. Compl. ¶ 42-43.

The Defendants have failed to respond to the Complaint or otherwise appear in this action.

### III. LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter a default judgment against properly served Defendants who fail to file a timely responsive pleading. Where a defendant has defaulted, the factual allegations in the complaint are taken as true, except regarding damages. *See Jackson v. FIE Corp.*, 302 F.3d 515, 525 n.29 (5th Cir. 2002). Default judgment is properly entered if it is "supported by well-pleaded allegations" and has "a sufficient basis in the pleadings." *Sec. & Exch. Comm'n v. McDuff*, 697 F. App'x 393, 394 (5th Cir. 2017) "A default judgment against a defendant conclusively establishes its liability, but it does not establish the amount of damages." *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).

In determining whether to enter a default judgment against a defendant, the Courts looks to: "(1) whether default judgment is procedurally warranted; (2) whether the Complaint sufficiently sets forth facts establishing that plaintiff is entitled to relief; and (3) what form of relief, if any, the plaintiff should receive." *United States v. Giles*, 538 F. Supp. 2d 990, 993 (W.D. Tex. 2008); *Pesarik v. Rosenthal*, No. 4:08-cv-097, 2009 U.S. Dist. LEXIS 39196, at *2 (E.D. Tex. May

8, 2009).

## IV. ARGUMENT

    A.  <u>A Default Judgment Should Be Awarded Against the Defendants</u>.

The Fifth Circuit uses six factors to determine whether a default judgment is procedurally warranted. *Alvarado Martinez v. Eltman L.*, P.C., 444 F. Supp. 3d 748, 752 (N.D. Tex. 2020) (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). The factors are: "(1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion." *Id.* In this case, all six factors weigh in favor of granting default judgment. The Plaintiff filed its Complaint on April 17, 2023 [DE 1]. First, Defendants have not answered the Complaint or otherwise appeared in the instant action; accordingly, Plaintiff's all well-pleaded allegations accepted as true, and thus, there are no material issues of fact exist. Defendants received proper notice and had time to appear before the Court, but they failed to do so. Defendants' complete absence in this case indicates a lack of good faith mistake or excusable neglect, and without a default judgment, Plaintiff cannot continue to litigate this case on the merits. As such, if default judgment is not granted, the Plaintiff will be left with no recourse for its injuries to its reputation and business caused by the Defendants' illegal counterfeiting activities. Such an outcome would be unfairly prejudicial to the Plaintiff. Defendants' failure to appear is grounds for default. Fed. R. Civ. P. 55. Furthermore, default would not be a harsh result because judgment would be equivalent to what Plaintiff is entitled to receive by law.

B.  The Plaintiff's Complaint is Sufficient for the Judgment.

To prevail on a trademark infringement claim under 15 U.S.C. § 1114, a Plaintiff must prove that a Defendant used, without the consent of the registrant, "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." To prevail on a claim of trademark infringement under the Lanham Act, the Plaintiff "must show two elements: (1) it possesses a legally protectable trademark and (2) [the alleged infringer's] use of this trademark 'creates a likelihood of confusion as to source, affiliation, or sponsorship.'" *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) (quoting *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). Unfair competition claims under 15 U.S.C. § 1125(a) are governed by the same standard as those for trademark infringement, which is the likelihood of confusion. *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 483 (5th Cir. 2004); *see* also *Matrix Essentials, Inc. v. Emporium Drug Mart,* 988 F.2d 587, 592 (5th Cir. 1993) ("As with trademark infringement, the touchstone of a section 1125(a) unfair competition claim is whether the defendant's actions are 'likely to cause confusion.'").

To determine whether "likelihood of confusion" exists, the courts turn to eight factors, known as the "digits of confusion": "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.,* 10 F.4th 422, 427 (5th Cir. 2021) (quoting *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009)). This list is non-exhaustive, and the digits are

"fact-specific and flexible." *Id.* The sixth digit, bad intent, is " not necessary" but "may alone be sufficient to justify an inference that there is a likelihood of confusion" *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 289 (5th Cir. 2020). However, courts found that this test is unnecessary when "the marks used by the allegedly infringing party are the exact marks owned by the plaintiff[.]" *See Coach, Inc. v. Brightside Boutique*, No. 1:11-CA-20 LY, 2012 WL 32941, at *3 (W.D. Tex. Jan. 6, 2012); *Viahart v. Chickadee Bus. Solutions*, 2021 U.S. Dist. LEXIS 249997 (E.D. Tex. 2021).

The Plaintiff is the owner of the G Pen Trademarks and these are exclusive to the Plaintiff. Compl. at ¶ 10. The Plaintiff's Marks are registered with the United States Patent and Trademark Office. Compl. at ¶ 10. See *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010)(holding that registration of a mark with the USPTO is prima facie evidence of the validity of the registered mark and of plaintiff's exclusive right to use the mark on the goods and services specified in the registration).

The Plaintiff is the owner of the G Pen Trademarks and these are exclusive to the Plaintiff. The Defendants do not have the Plaintiff's consent to sell products that are not genuine G Pen goods. The Plaintiff has been damaged by Defendants' acts because those acts were committed with the intent to trade on the goodwill of the G Pen Marks, cause confusion and deception in the marketplace, and divert potential sales of the Plaintiff's vaporizers to the Defendants. As for the Defendants' sale of counterfeiting goods, the Plaintiff specifically points to three (3) of the Plaintiff's marks: (1) U.S. Trademark Registration Number 4,390,645 for the standard character mark "G Pen" in association with goods further identified in registration in international class 010; (2) U.S. Trademark Registration Number 5,368,594 for the word mark "G Pen" and its logo in association with goods further identified in the registration in international class 010; (3) U.S.

Trademark Registration Number 4,470,963 for the standard character mark "Grenco Science" in association with goods further identified in the registration in international class 010.

The Plaintiff further alleges that the Defendants have sold in commerce Counterfeit Goods using reproductions, counterfeits, copies and/or colorable imitations of G Pen Marks. In fact, the Defendants did sell a vaporizer with three (3) fake G Pen Marks, which is in fact a counterfeit product. The vaporizer, which donned the alleged Trademarks, was sold for a profit in the ordinary stream of commerce. The Defendants used images and names identical to or confusingly similar to the G Pen Marks, to confuse customers and aid in the promotion and sales of Counterfeit Goods under the Infringing Marks. The Defendants' use of the G Pen Marks includes importing, advertising, displaying, distributing, selling, and/or offering for sale unauthorized copies of G Pen branded products. The Defendants' offering to sell, selling, importing and encouraging others to import Counterfeit Goods bearing the Infringing Marks in this manner was and is likely to cause confusion or to cause mistake and/or deceive consumers who purchase the Counterfeit Goods.

C. Plaintiff is Entitled to Statutory Damages

The Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. Moreover, it constitutes false designation of origin which is likely to cause confusion and mistake as it will deceive consumers as to the source or origin of such goods or sponsorship or approval of such goods by the Plaintiff. As a result, the elements described by the court have been satisfied and statutory damages must be awarded.

A plaintiff who proves a violation of a registered trademark is entitled to recover its profits and any damages sustained. 15 U.S.C. § 1117(a). According to 15 U.S.C. § 1117(b), "in a case involving use of a counterfeit mark . . . the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is

greater. . .."

The Court has wide discretion to determine a just amount for statutory damages for trademark infringement. *Laerdal Med. Corp. v. Basic Med. Supply, LLC*, No. CV H-16-35, 2016 WL 6436557, at *3 (S.D. Tex. Oct. 31, 2016). Section 1117(c) allows the plaintiff to elect to receive statutory damages instead of actual damages any time before judgment is entered. 15 U.S.C. § 1117(c). Where there is a counterfeit mark, the plaintiff may recover either:

(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c). Statutory damages are particularly helpful in the default-judgment context because "counterfeit records are frequently nonexistent, inadequate, or deceptively kept ... making proving actual damages in these cases extremely difficult if not impossible." *Munn*, 2019 WL 7500499, at *3 (quoting *Tiffany Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (citing S. Rep. No. 177, 104th Cong. 1995)).*Viahart, LLC v. Chickadee Bus. Sols., LLC*, No. 6:19-CV-406-JCB, 2021 WL 6333033, at *14 (E.D. Tex. July 2, 2021), report and recommendation adopted, No. 6:19-CV-00406-RWS, 2022 WL 1262125 (E.D. Tex. Apr. 27, 2022).

Because the Defendants have refused to cooperate, as indicated through the failure to obtain counsel, and continue the litigation, it is not possible for the Plaintiff to establish exact damages with certainty. While the Defendants probably have not sold millions of counterfeit products, it has engaged in the purchase and sale of counterfeits of at least one unit, and likely traded in more.

While actual damages to the Plaintiff may not be calculated with exact certainly, an assessment of damages has been completed by Plaintiff, GS HOLISTIC, LLC. *See* Folkerts Aff. as to Value of Damages; *see also* Folkerts Aff. as to Damages. GS HOLISTIC, LLC Owner, Chris Folkerts, states that the Plaintiff is seeking only a fraction of the actual losses to its business and that damages of $150,000.00 are reasonable since the actual damages to the business are far in excess of this amount. Folkerts Aff. as to Value of Damages ¶¶ 8,9, 15.

Further, in *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.,* the Fifth Circuit held:

> "Great latitude is given the district court in awarding damages under the Lanham Act, 'which expressly confers upon the district judges wide discretion in determining a just amount or recovery for trademark infringement.'"

112 F.3d 1296, 1304 (5th Cir. 1997) (quoting *Holiday Inns, Inc. v. Alberding*, 683 F.2d 931, 935 (5th Cir. 1982)). Based on the discretion this Court is given in Lanham Act cases such as this, the damages assessment of GS HOLISTIC, LLC, an award of $150,000.00 ($50,000 per Mark) is the appropriate amount of statutory damages that is well within the discretion of the Court to award. This amount not only reflects actual damages suffered by the Plaintiff, but also sends an unequivocal message to the industry that counterfeiting will not be tolerated, nor will misrepresentations or otherwise refusing to cooperate with discovery demands (even if informally presented). Here, the Defendants have infringed on five of the Plaintiff's trademarks with the Registration Numbers 4,390,645, 5,368,594, and 4,470,963 justifying $150,000.00 in statutory damages.

### D. Plaintiff is Entitled to Costs of Litigation

Pursuant to 15 U.S.C. § 1117, the Plaintiff is entitled to recover the costs of the action. See 15 U.S.C. § 1117. The Plaintiff requests that this Court award costs in the total amount of

$150,752 consisting of the filing fee ($402.00), the process server fee ($285), and Plaintiff's investigation fees ($65). See Aff. Supp. Final Default J. ¶ 6.

### E. Plaintiff is Entitled to Injunctive Relief

By the reasons explained in Plaintiff's Complaint and pursuant to 15 U.S.C. § 1116, the Plaintiff is entitled to injunctive relief. The Plaintiff requests that this Court enter an order which permanently enjoins the Defendants, and their agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all persons acting in concert or participation with it from:

(a) Import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment, licensing, development, display, delivery, marketing advertising or promotion of the counterfeit G Pen product identified in the complaint and any other unauthorized G Pen product, counterfeit, copy or colorful imitation thereof;

(b) Assisting, aiding or attempting to assist or aid any other person or entity in performing any of the prohibited activities referred to in Paragraphs (a) above.

### F. Plaintiff is Entitled to Destruction of Infringing Products

Pursuant to 15 U.S.C. §1118, the Plaintiff requests that this Court grant an order requiring the Defendants, at their cost, deliver to the Plaintiff for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the G Pen Marks.

## V. CONCLUSION

Given the foregoing, this Court should grant Plaintiffs' motion in its entirety.

Date: December 11, 2023

Respectfully Submitted,

*/s/ Sanjay K. Minocha*
Sanjay K. Minocha
Texas Bar # 24065763
Minocha Law Firm PLLC
3300 Oak Lawn Avenue
Suite 700
Dallas, Texas 75219
Serv604@LegalBrains.com
Telephone: 561-232-2222
*Attorney for the Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 11, 2023, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF to serve on all counsel of record.

*/s/ Sanjay K. Minocha*
Sanjay K. Minocha
